# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEONARD ALMOND,<br>                  **Plaintiff,**<br><br>v.<br><br>JANSSEN PHARMACEUTICALS, INC.<br>and JOHNSON & JOHNSON,<br>                  **Defendants.** | CIVIL ACTION<br><br><br><br><br>NO. 20-2183 |

## OPINION

Plaintiff Leonard Almond was prescribed Elmiron, a medication designed, marketed, and distributed by Defendant Janssen Pharmaceuticals, Inc.[1] to treat his interstitial cystitis. Elmiron has been identified as a cause of pigmentary maculopathy, a medical condition that affects vision. Though Plaintiff does not allege that he has developed maculopathy as a consequence of using Elmiron, he contends Defendants' negligence has exposed him—and the people he seeks to represent as a class—to a higher risk of visual injury. Specifically, he alleges that Defendants negligently failed to conduct adequate safety testing, notify the Federal Drug Administration ("FDA") of the link between Elmiron and maculopathy, and alert consumers to the risks of taking the drug.

Plaintiff is seeking a declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, that Elmiron is defective as it is unsafe for its intended use. He also demands that Defendants pay for ongoing medical monitoring of Plaintiff and prospective class members on the basis that early diagnosis achieved through a monitoring regime will lead to

---

[1] Janssen, a Pennsylvania corporation with its principal place of business in Pennsylvania, is a wholly-owned subsidiary of Defendant Johnson & Johnson, a New Jersey corporation with its principal place of business in New Jersey. Plaintiff Almond is a citizen and resident of Pennsylvania.

benefits in treatment, management, rehabilitation, or mitigation of long term health consequences.

The Amended Complaint sets forth three separate putative classes—the "Proposed Illinois Class," the "Proposed Pennsylvania Class," and "the Proposed Nationwide Class"—each of which includes only people who "were prescribed and took Elmiron who are currently asymptomatic for pigmentary maculopathy and have not received a diagnosis of retinal toxicity due to Elmiron use." Defendants have filed a Motion to Strike only the Proposed Nationwide Class Allegations Under Federal Rules of Civil Procedure 23(d)(1)(D), 23(c)(1)(A), and 12(f).[2]

I.     FACTS

A short foray into the alleged facts is necessary to put Plaintiff's claim into context. In 1996, the Food and Drug Administration ("FDA") approved Defendants' New Drug Application ("NDA") for Elmiron—otherwise known as pentosan polysulfate sodium—for use in treating interstitial cystitis. Beginning in 2018, however, a series of scientific studies identified long-term users of Elmiron who developed maculopathy, a medical condition that can result in significant vision loss. Multiple published studies recommended visual examinations to monitor Elmiron patients for drug toxicity that could result in maculopathy. Despite these studies that identified a link between Elmiron and maculopathy, Defendants "have made no change to [Elmiron's] label or taken any steps to warn the medical community and users of the drug regarding these risks," though Defendants "made label changes in other countries to warn of

---

[2] Defendants do not seek to strike the class allegations that pertain to the Proposed Pennsylvania Class. And, with respect to the Proposed Illinois Class, shortly before the issuance of this opinion Plaintiff opted not to proceed with the Illinois class allegations in light of a recent case of the Supreme Court of Illinois holding that an Illinois plaintiff cannot bring a negligence action for medical monitoring based only on increased risk of injury. *See Berry v. City of Chicago*, 2020 IL 124999, __ N.E.3d __ (Ill. 2020).

these injuries." The prescription label on Elmiron sold in the United States has never warned of a risk of maculopathy or vision loss.[3]

## II. DISCUSSION

By Plaintiff's own account this is not a case where he is endeavoring to certify a nationwide class to be adjudicated under the various fifty state laws. Instead, he is seeking to certify a Proposed National Class in which each of the class members' claims are resolved under Pennsylvania law regardless of whether they live in Pennsylvania or elsewhere. He acknowledges that the parties' dispute over whether Pennsylvania law governs the Proposed National Class is a "purely legal issue" that can be resolved on a motion to strike.

Defendants agree that the matter to be decided here is one of law arguing that Pennsylvania's choice-of-law rules will necessarily require application of any one of each state's laws. The individualized factual and legal considerations, amplified by complex variations in state law, would, in Defendants' view, be fatal to the viability of class treatment of Plaintiff's medical monitoring claim.

Plaintiff acknowledges—as he must—that variations in state law pose significant hurdles "in certain context" to certification of nationwide classes. But, according to Plaintiff, this is not that context. Here, his argument, which is premised on the Pennsylvania Supreme Court's 2018 decision *Danganan v. Guardian Prot. Servs.*, 179 A.3d 9 (Pa. 2018), is that *Danganan* by extension of its holding provides that a national class as proposed here is appropriate because both Pennsylvania residents and out of state plaintiffs can avail themselves of Pennsylvania law

---

[3] Plaintiff's brief in opposition to the pending motion asserts that Defendants did, in fact, update the labeling for Elmiron to warn of potential vision damage, but only after the first lawsuit asserting claims against Defendants for their role in the distribution of Elmiron was filed in 2020. Defendants' motion papers assert that, to the contrary, Janssen sought permission from the FDA to update the label in 2019. This factual dispute is outside of the scope of the present motion.

when suing a Pennsylvania defendant. A closer analysis of *Danganan* and of Pennsylvania's choice-of-law rules, leads to the contrary conclusion. While Plaintiff's position is correct in some regards, it ignores a key component of the Pennsylvania Supreme Court's decision which ultimately requires the Court to conduct a choice-of-law analysis which analysis yields the result that variations in state law render the Proposed National Class uncertifiable under Federal Rule of Civil Procedure 23.

### A. *Danganan*

In *Danganan*, a California resident sued Guardian Protection Services, a company headquartered in Pennsylvania, on behalf of himself and a putative nationwide class of persons. His contention was that Guardian's customer contracts—which it purported authorized continued billing of customers regardless of their cancellation attempts—violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). 73 P.S. § 201-3, *et seq*. The agreement contained a choice-of-law provision which provided that the "Agreement shall be governed by the laws of Pennsylvania."

On a motion to dismiss the complaint, the federal district court in which the matter was pending held that the UTPCPL is restricted to protecting the rights of the citizens of Pennsylvania; that Guardian's headquarters in Pennsylvania did not establish a sufficient nexus between the out of state resident and Pennsylvania; and, that the choice-of-law provision in the consumer contract could not be employed to broaden the limited scope of the UTPCPL. *Danganan*, 179 A.3d at 11 (*citing Danganan v. Guardian Prot. Servs*., 2016 WL 3977488, at *3 (W.D. Pa. July 25, 2016)).

The matter was appealed to the U.S. Court of Appeals for the Third Circuit which certified two questions to the Pennsylvania Supreme Court: (1) "[w]hether a non-Pennsylvania

4

resident may bring suit under the [UTPCPL], against a business headquartered in and operating from Pennsylvania, based on transactions which occurred outside of Pennsylvania?"; and, (2) "[i]f the UTPCPL does not allow a non-Pennsylvania resident to invoke its protections, whether the parties can, through choice-of-law provision, expand its protections to parties to the contract who are non-Pennsylvania resident consumers?" *Id.* at 11-12 (*citing Danganan v. Guardian Prot. Servs.*, 170 A.3d 981 (Pa. 2017)).

With respect to the first question, the Pennsylvania Supreme Court focused on whether there was a textual basis in the statute for any geographical or residency limitations. Delving down into the plain meaning of the words "person," "commerce," and "trade" it decided that, by its terms, the UTPCPL does not contain any such limitations. *Id.* at 16. Accordingly, it held that "the Law's prescription against deceptive practices employed by Pennsylvania-based businesses may encompass misconduct that has occurred in other jurisdictions." *Id.* at 16-17.

Moving to the second certified question, the Court emphasized the distinction between a choice-of-law *provision* which "pertains to a contractual agreement between the parties as to which jurisdiction's laws will govern the parties' relationship," and which was the focus of the second certified question, and choice-of-law *rules* which "refer[] to the precepts used to select which jurisdiction's laws to apply in a lawsuit. . . ." *Id.* at 14 n.7. Finding the second question regarding the choice-of-law provision moot in light of its decision on the first question it thus did not address the issue of whether a choice-of-law *provision* could expand the reach of the UTPCPL. However, addressing Guardian's concern that its decision could be read to allow "any person around the globe" to file a cause of action under the UTPCPL, the Court specifically stated that it was not addressing how choice-of-law *rules* may limit the scope of the UTPCPL's reach in a given matter. *Id.* at 17 ("jurisdictional principles and choice-of-law rules" may offer

5

limitations to the reach of the UTPCPL). Indeed, any choice-of-law analysis would be left for the trial court to decide on remand "within the context of [the] specific litigation" before it. *Id.* (*citing* SUMMARY OF PA. JURISPRUDENCE 2d §1:10).

Thus, a close reading of *Danganan* establishes that "both Pennsylvania residents and out of state plaintiffs can avail themselves of Pennsylvania law when suing a Pennsylvania defendant." But, that principle does not necessarily extend beyond the particular statute at issue in *Danganan*—the UTPCPL—and does not mandate that a national class is appropriate here. Whether one is or is not must be decided by conducting a traditional choice-of-law-analysis.

## B. Choice-of-Law Analysis

The choice-of-law rules of the forum state—here, Pennsylvania—apply to litigation before a federal court sitting in diversity. *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007) (*citing Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). Under Pennsylvania's choice-of-law analysis rules, "courts first consider whether a true conflict exists between the two states. This is because in some instances the purported conflict is ultimately revealed to be a false conflict—meaning that the laws of both states would produce the same result, or that one of the states has no meaningful policy-based interest in the issue raised." *Melmark, Inc. v. Schutt by & Through Schutt*, 206 A.3d 1096, 1104 (Pa. 2019) (internal quotation marks and citations omitted). Accordingly, "the first part of the choice of law inquiry is [to] determin[e] if there is an actual or real conflict between the potentially applicable laws," and if there is a conflict, to "examine the governmental policies underlying each law" and determine if the conflict is true, false, or "one in which neither state's interests would be impaired if its laws were not applied." *Hammersmith*, 480 F.3d at 230 & n.9 (internal quotation marks omitted).

In Pennsylvania, a plaintiff may bring a common law claim for medical monitoring "to recover only the quantifiable costs of periodic medical examinations necessary to detect the onset of physical harm." *In re Paoli R.R. Yard PCB Litig.,* 916 F.2d 829, 850 (3d Cir. 1990). To prevail on such a claim, the plaintiff must show: "(1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles." *Redland Soccer Club, Inc. v. Dep't of the Army & Dep't of Def. of the U.S.*, 696 A.2d 137, 145-46 (Pa. 1997). Although some Pennsylvania courts initially rejected medical monitoring claims on the basis that tort principles required that a plaintiff demonstrate actual injury before permitting recovery, *see e.g. Peterman v. Techalloy Co., Inc.*, 29 Pa. D. & C.3d 104 (Montgomery Cty. 1982), Pennsylvania's Supreme Court later held that medical monitoring claims could proceed where potential injury was not speculative, *see Simmons v. Pacor, Inc.*, 674 A.2d 232 (Pa. 1996) (recognizing medical monitoring claims for asbestos exposure); *Redland*, 696 A.2d at 143 (collecting cases).

Plaintiff's medical monitoring claims, asserted through his nationwide class allegations, raise a conflict between Pennsylvania law and the law of other states. *See* MCLAUGHLIN ON CLASS ACTIONS § 5:18 (17th ed.) (surveying variation among state law approaches to medical monitoring); *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 327 F.R.D. 245, 260-63 (D. Minn. 2018) (collecting cases). As permitted by Pennsylvania law, Plaintiff limits his

medical monitoring claim to class members who have suffered no actual injury. Pennsylvania belongs to a subset of states—including Florida, Utah and West Virginia—that allow such no-injury medical monitoring claims. *See Petito v. A.H. Robins Co.*, 750 So.2d 103, 105-07 (Fla. Dist. Ct. App. 1999); *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 432 (W.Va.1999); *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 979 (Utah 1993).

But the highest courts of other states have expressly refused to recognize common law claims for medical monitoring in the absence of physical injury. *See Berry v. City of Chicago*, 2020 IL 124999, __ N.E.3d __ (Ill. 2020); *Caronia v. Philip Morris USA, Inc.*, 5 N.E.3d 11 (N.Y. 2013); *Lowe v. Philip Morris USA, Inc.*, 183 P.3d 181 (Or. 2008); *Sinclair v. Merck & Co.*, 948 A.2d 587, 595 (N.J. 2008); *Hous. Cty. Health Care Auth. v. Williams*, 961 So.2d 795, 811 (Ala. 2007); *Paz v. Brush Engineered Materials, Inc.*, 949 So.2d 1 (Miss. 2007); *Henry v. Dow Chem. Co.*, 701 N.W.2d 684 (Mich. 2005); *Wood v. Wyeth-Ayerst Labs., Div. of Am. Home Prods.*, 82 S.W.3d 849, 853-54 (Ky. 2002). Louisiana also prohibits no-injury medical monitoring claims: in 1999, the Louisiana Legislature amended the Louisiana civil code to require that a plaintiff seeking medical monitoring damages must demonstrate actual injury, overruling a contrary decision of the Louisiana Supreme Court, *Bourgeois v. A.P. Green Indus., Inc.*, 716 So.2d 355 (La. 1998). *See* La. Civ. Code art. 2315. In Massachusetts, though a medical monitoring plaintiff need not show actual physical injury, they must show at least "subcellular changes that substantially increased the risk of serious disease, illness, or injury." *Donovan v. Philip Morris USA, Inc.*, 914 N.E.2d 891, 902 (Mass. 2009).

Yet another category of states allows recovery for medical monitoring in the absence of physical injury not as a cause of action, but as a remedy. *See Sadler v. PacifiCare of Nev., Inc.*, 340 P.3d 1264, 1270 (Nev. 2014); *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 75-77 (Md. Ct.

App. 2013); *Meyer ex rel. Coplin v. Fluor Corp.*, 220 S.W.3d 712, 716-17 (Mo. 2007); *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 823-24 (Cal. 1993). In other states, such as Idaho and Hawaii, no court has yet decided whether a plaintiff can bring a no-injury medical monitoring claim.

The Pennsylvania Supreme Court has identified multiple policy reasons to support its recognition of medical monitoring claims, including to: (1) "promote early diagnosis and treatment of disease or illness resulting from exposure to toxic substances caused by a tortfeasor's negligence"; (2) "avoid[] the potential injustice of forcing an economically disadvantaged person to pay for expensive diagnostic examinations necessitated by another's negligence; (3) "afford[] toxic-tort victims, for whom other sorts of recovery may prove difficult, immediate compensation for medical monitoring needed as a result of exposure; (4) "further[] the deterrent function of the tort system by compelling those who expose others to toxic substances to minimize risks and costs of exposure; and, (5) further "the important public health interest in fostering access to medical testing for individuals whose exposure to toxic chemicals creates an enhanced risk of disease." *Redland*, 696 A.2d at 145 (internal quotation marks and citations omitted).

In contrast, other state supreme courts have identified multiple reasons *not* to recognize medical monitoring claims without demonstration of actual injury. The New York Court of Appeals explains that "dispensing with the physical injury requirement could permit tens of millions of potential plaintiffs to recover monitoring costs, effectively flooding the courts while concomitantly depleting the purported tortfeasor's resources for those who have actually sustained damage," and that the "legislature is plainly in the better position to study the impact and consequences of creating such a cause of action, including the costs of implementation and

9

the burden on the courts in adjudicating such claims." *Caronia*, 5 N.E.3d at 18 (internal quotation marks and citation omitted); *see also Henry*, 701 N.W.2d at 694 (explaining that recognition of a no-injury medical monitoring claim "would create a potentially limitless pool of plaintiffs" that "could drain resources needed to compensate those with manifest physical injuries and a more immediate need for medical care"). Applying the law of other states that do not recognize medical monitoring claims would impair Pennsylvania's interest in deterring Pennsylvania corporations from exposing persons to harmful substances, while impairing other states' interest in avoiding the "inequitable diversion of money away from those who have actually sustained an injury." *Caronia*, 5 N.E.3d at 18.

Because a true conflict of law therefore exists for purposes of Pennsylvania's choice-of-law analysis, it must be determined which state's law applies. *See Melmark,* 206 A.3d at 1105. Pennsylvania previously applied the rule of *lex loci delicti*, under which the law of the state where a plaintiff's injury occurred would govern the dispute. *See id.* at 1107. In *Griffith v. United Air Lines, Inc.*, however, Pennsylvania abandoned the rule of *lex loci delicti* "in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." 203 A.2d 796, 805 (Pa. 1964). Under Pennsylvania's current choice-of-law rubric, it must be determined "which state has the most significant relationship to the occurrence and the parties." *Melmark*, 206 A.3d at 1107. "The overriding consideration is which state has a priority of interest in the application of its rule of law so as to vindicate the policy interests underlying that law." *Id.* (internal quotation marks and citation omitted). "In evaluating the most significant relationship, Pennsylvania courts look to the factors in the Restatement (Second) of Conflicts: the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation

10

and place of business of the parties; and the place where the relationship, if any, between the parties is centered." *Atkinson v. Luitpold Pharm., Inc.*, 414 F.Supp.3d 742, 745 (E.D. Pa. 2019); *see also* Restatement (Second) of Conflict of Laws § 145(2). Though Pennsylvania no longer applies the rule of *lex loci delecti*, the location of a plaintiff's injury remains important to the analysis: "where the place where the injury occurred was not fortuitous, as for example, in an airplane crash, the place of injury assumes much greater importance, and in some instances may be determinative." *Shields v. Consol. Rail Corp.*, 810 F.2d 397, 401 (3d Cir. 1987) (internal quotation marks and citation omitted). Pennsylvania's choice-of-law analysis does not require an assessment of a state's contacts quantitatively; rather, it examines "which state has the greater interest in the application of its law by studying the contacts of each state to the [in]cident relating to the issue before the court and comparing them on a qualitative scale." *Shuder v. McDonald's Corp.*, 859 F.2d 266, 271-72 (3d Cir. 1988). "Because of the focus on competing policies, such analysis tends to be fact-sensitive." *Melmark*, 206 A.3d at 1107.

Applying Pennsylvania's factor analysis here, the home state of each member of the nationwide class has the most qualitatively significant contacts with this case, and thus the laws of class members' home states should apply.[4] Janssen Pharmaceuticals is incorporated in Pennsylvania, Johnson & Johnson is incorporated in New Jersey, and the nationwide class members are domiciled in their home states. Plaintiff alleges that Elmiron was marketed, sold, prescribed, and ingested throughout the United States, not just in Pennsylvania, and does not

---

[4] Defendants offer no analysis of the application of Pennsylvania's choice-of-law factors to the facts of this case, and instead simply cite to other pharmaceuticals cases from this Circuit. Plaintiff affords this analysis less than a page in his briefing. Pennsylvania's choice-of-law analysis is "fact-sensitive," however, and must focus on the individual circumstances of each case. *Id.* at 1107. Accordingly, the choice-of-law determination is made by an analysis of the specific allegations of the Amended Complaint.

allege that potential members of the Proposed National Class who are not Pennsylvania residents have any ties to Pennsylvania at all. The parties' relationship therefore is centered not in Pennsylvania, but instead in the states where the class members' were prescribed and ingested Elmiron, and thus where their claims arose. The Amended Complaint does not specify if any of Defendants' communications with the FDA or their conduct in connection with Elmiron's drug label occurred outside of Pennsylvania.[5] Even assuming that this conduct occurred in Pennsylvania, however, it is clear that the situs of the class members' exposure to Elmiron is their home state—where they were prescribed and ingested Elmiron—not Pennsylvania. Further, class members' exposure in their home state was not fortuitous, but rather reflected where they lived and received medical treatment. Based on these circumstances, the class members' home states have a stronger interest than Pennsylvania in applying its law to the class members' claims. Accordingly, the law of the class members' home states apply to their claims, not Pennsylvania law.

Plaintiff's arguments to the contrary are without merit. Though Plaintiff emphasizes that Pennsylvania has a strong interest in regulating unlawful conduct by Pennsylvania corporations, place of incorporation is one of several factors in Pennsylvania's choice-of-law analysis. Plaintiff's analysis of these other factors focuses on his own circumstances as a Pennsylvania resident. But under Pennsylvania law, an "individualized choice of law analysis" is applied to each plaintiff's claims in a proposed class. *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996). Plaintiff cites no medical monitoring or defective pharmaceutical case in which Pennsylvania law was held to apply, rather than the law of the home state in which the claim

---

[5] While Janssen Pharmaceuticals is incorporated in Pennsylvania, Defendants contend that Janssen Pharmaceuticals is actually headquartered in New Jersey.

arose.⁶ The strong weight of precedent from this district generally holds that the laws of plaintiffs' home states apply in defective pharmaceuticals cases, not Pennsylvania substantive law. *See Atkinson*, 414 F.Supp.3d at 746-47 (collecting cases, and holding that law of plaintiffs' home states, not Pennsylvania, applied); *Knipe v. SmithKline Beecham*, 583 F.Supp.2d 602, 614-16 (E.D. Pa. 2008) (same).⁷

### C. Defendants' Motion to Strike

Defendants move to strike the nationwide class allegations from the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D) on the basis that the nationwide class allegations cannot satisfy Rule 23(b)(2), which allows certification of class actions for injunctive or declaratory relief where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," or Rule 23(b)(3), which allows certification where "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is

---

⁶ Indeed, Plaintiff cites cases that are inapposite. For example, *Gress v. Freedom Mortg. Corp.*, 386 F.Supp.3d 455, 462 (M.D. Pa. 2019) held that a putative class of out of state plaintiffs could establish specific personal jurisdiction over a defendant Pennsylvania corporation, but did not consider choice-of-law issues. *Travelers Prop. Cas. Co. of Am. v. Chubb Custom Ins. Co.*, 864 F.Supp.2d 301, 311 (E.D. Pa. 2012) held that Pennsylvania, not Indiana, law applied to a dispute over insurance contracts executed in Pennsylvania and issued to Pennsylvania corporations. *Unisys Fin. Corp. v. U.S. Vision, Inc.*, 630 A.2d 55, 58 (Pa. 1993) applied the "long-standing rule of Pennsylvania [] that the law of the forum determines the time within which a cause of action shall be commenced," which the Court explained "has not been changed despite the adoption of the significant contacts/interest analysis." Lastly, Plaintiff's footnote citation to multiple cases from California or involving the application of California law carries little weight here.

⁷ Plaintiff contends that *Atkinson* is distinguishable from the instant case because, *inter alia*, *Atkinson* did not address the impact of *Danganan* on Pennsylvania's choice-of-law analysis and *Atkinson* did not involve a claim against a Pennsylvania corporation. As already discussed, *Danganan* does not impact Pennsylvania's choice-of-law analysis, and the site of class members' exposure to Elmiron is relevant to the choice-of-law analysis. As to Plaintiff's second argument, Janssen Pharmaceuticals' state of incorporation is one factor among several involved in Pennsylvania's choice-of-law analysis, and is not dispositive here.

superior to other available methods for fairly and efficiently adjudicating the controversy."

Rule 23 provides that a court "may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). As *Korman v. Walking Co.* explained, a motion to strike class allegations pursuant to Rule 23(d)(1)(D) "seems, for all practical purposes, identical to an opposition to a motion for class certification," and the rule provides "the procedural mechanism for striking class allegations from the complaint once the Court determines that maintenance of the action as a class is inappropriate." 503 F.Supp.2d 755, 762 (E.D. Pa. 2007) (emphasis omitted). As a general rule, "[i]n a putative class action case like this one, a plaintiff may generally conduct discovery relevant to the Rule 23 class certification requirements and a court should, therefore, only grant a motion to strike class allegations if class treatment is evidently inappropriate from the face of the complaint." *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F.Supp.3d 610, 615 (E.D. Pa. 2015); *see also Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011) (explaining that the case was "not among the rare few where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met"). "It is only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be granted." *Zarichny*, 80 F.Supp.3d at 615 (internal quotation marks and citation omitted).

Defendants argue that because the law of each class member's home state, not Pennsylvania, governs each claim, a nationwide medical monitoring class cannot satisfy the requirements of Federal Rule of Civil Procedure 23(b)(2) or (b)(3). Specifically, Defendants argue that: (1) a nationwide class is impossible because various states reject claims for medical

14

monitoring without actual injury; (2) proceeding with a nationwide class would require predicting whether various state supreme courts would recognize a medical monitoring cause of action where they have not ruled on the issue; and, (3) the elements of a no-injury medical monitoring claim vary even among states that allow such claims, thereby exacerbating individualized factual considerations for each class member. Plaintiff concedes the issue, explaining that "[he] lose[s]" the motion if Pennsylvania law does not apply.

Defendants' first argument is correct, and is sufficient to establish that a nationwide class action cannot proceed. To receive class certification and thus proceed as a class action, a putative class must satisfy the requirements of Rule 23(a),[8] as well as the requirements of Rules 23(b)(1), (2), or (3).[9] *See Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998). A class action can proceed under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." A class action can proceed under Rule 23(b)(3) where "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

---

[8] A class will satisfy the requirements of Rule 23(a) only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

[9] Under Rule 23(b)(1), a class action can proceed if "prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1). Though the language of the Amended Complaint suggests Plaintiff seeks to proceed under Rules 23(b)(2) and 23(b)(3), there is no similar language as to Rule 23(b)(1); and Plaintiff raises no objection to Defendants' assertion that Plaintiff seeks to proceed under Rules 23(b)(2) and 23(b)(3). Accordingly, analysis here will focus on Rules 23(b)(2) and 23(b)(3).

Whether Plaintiff's claims present individualized factual issues that preclude class action adjudication need not be addressed here because the variation in state law alone is sufficient to establish that "maintenance of the action as a class is inappropriate." *Korman*, 503 F.Supp.2d at 762 (emphasis omitted). Plaintiff asserts a no-injury medical monitoring claim for declaratory relief on behalf of a nationwide class. Because this nationwide class includes class members from states that expressly prohibit no-injury medical monitoring claims, the declaratory relief Plaintiff seeks could never be "appropriate respecting the class as whole." Fed. R. Civ. P. 23(b)(2). Accordingly, the nationwide class cannot satisfy Rule 23(b)(2). *See Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 58-59 (3d Cir. 1994) (explaining that though "the language of (b)(2) does not even require that the defendant's conduct be directed or damaging to every member of the class . . . [w]hat is important is that the relief sought by the named plaintiffs should benefit the entire class"); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class").

Variation in state law also precludes certification under Rule 23(b)(3). Rule 23(b)(3)'s predominance requirement "measures whether the class is sufficiently cohesive to warrant certification." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187 (3d Cir. 2001). Here, the proposed nationwide class is not sufficiently cohesive. Rather, a fault line divides class members whom state law permits to seek relief through a no-injury medical monitoring claim, and those whom state law prohibits from asserting the very claim at issue here. Because class members from various states cannot assert no-injury medical monitoring claims, common issues do not predominate across the Proposed Nationwide Class. *See Georgine*, 83 F.3d at 627 (citing variation among states in the availability of medical monitoring claims as a

16

basis to reject certification).

The putative nationwide medical monitoring class cannot be certified under either Rules 23(b)(2) or 23(b)(3). Accordingly, Defendants' motion to strike allegations that support only the Proposed Nationwide Class will be granted.[10]

An appropriate order follows.

**November 6th, 2020**               **BY THE COURT:**

/s/Wendy Beetlestone, J.
_____
**WENDY BEETLESTONE, J.**

---

[10] Because the Defendants' Motion to Strike will be granted under a Rule 23 rubric, their arguments made pursuant to Fed. R. Civ. P. 12(f) are not reached.